Judge Trimble,
delivered the following opinion and. decree of the court: — John Myers exhibited his bilí against Frederick Baker ; in which he charges, that he purchased of the said Baker, a certain house and lot in the town of Danville, for the price of400/. ; and that he executed to Baker two bonds, One for 100/. and the other for 150/. to secure the payment of part of the 400/. ; that those bonds not having been fully paid, suits were brought, and judgments obtained thereon by Bakers against the complainant, and Jacob Myers, his security in the bonds ; and that Baker had made some kind of equitable transfer of those bonds to the defendant, Ows-ley. The bill further charges, that John Myers took á conveyance of Baker, for the house and lot; that upon the sale, Baker had fraudulently represented the lot to be á half acre lot, the usual size of the lots in the town ; and had also misrepresented the true boundaries thereof, so as to induce him to receive a conveyance agreeably to the boundaries, as represented by Baker; that a certain John Beigler, set up a title to about one third part of thé lot as conveyed, and detained the possession theraof from the complainant ; the complainant, by the advice and direction of Baker, and under the most positive assurances from him, that Beigler’s title was only a pretended one, brought an action of ejectment against Beig-ler, to recover the possession ; and that upon a full and fair trial, the title of that part of the lot claimed by Beig-ler, was found to be in him ; and that the complainant was obliged to pay the costs of the ejectment, after expending much time and money in prosecuting the same.
The bill also charges, that he had made some pay¿ ments, for which he had not obtained credit; wherefore^ the bill prays an injunction (which was granted) ; that those payments may be allowed him ; that he may have an abatement or deduction in the amount of the judgments at law, in proportion to the part of the lot which had been taken by Beigler’s title ; and for generál relief.
Baker, in his answer, admits that he represented th# lot to be of the usual size of the town lots ; and that he represented the boundaries thereof agreeably to the deed executed by him to John Myers; but he denies ⅛⅜£ *545 Beigler set up, or had any claim to any part of the lot so conveyed by him (Baker) to Myers ; and he savs that Myers, seeking pretexts for procrastination, claimed ground not included in the conveyance, and so produced the dispute with Beigler. He praj s, in his answer, that Jacob Myers may be made a defendant, and that process may be awarded against him ; he alleges that he had made an equitable transfer of the bonds, or judgments, to Owsley ; that Owsley and himself went to see John and Jacob Mvers on the subject; that Jacob then assumed to pay Owsley the. amount of his demand on said bonds, which was 100Ú with interest for a considerable time, on Owsley’s agreeing to wait, with him one year for the payment; which agreement, Owsley fulfilled. He alleged, further, that it was clcarlv understood, that Owsley was to look only to Jacob Myers, as it was commonly reported that J An was. insolvent ; that Jacob had at that time full information on the subject of the dispute with Beigler; and avers that the complainant has received ail just credits, except 13/. 7s, fd. which the answer offers him : and then calls upon Jacob Myers to answer sundry interrogatories, corresponding, in substance, with the foregoing statement, relating to Owsley, and his interest.
On the motion of the complainant, Daniel Owsley was made a defendant, who filed his answer, in which he says he knows nothing of the original contract bet wet it John Myers and Baker. But he says that one Rolls was considerably indebted to him, and was about tp leave the state ; wherefore, he attached Rolls’s property : that Wdliam Pearle became Rolls’s security: that Rolls, ’anxious to relieve Pearle, informed him (Owsley) that Baker was indebted to him, and that John Myers and Jacob Myers were indebted to Baker ; for which they had given their bond : upon which information, and at the request of Rolls and Baker, he (Owsley), with the defendant, Baker, went to see Jacob Myers : that Ows-ley agreed that if Jacob Myers would then assume the payment of the said bonds to him, he wouM; wait with him one year for payment; and would releáse Rolls and Pearle ; and he would look to Jacob Myers alone, as John was reported to be, insolvent: all vihich, he says, was agreed to by Jacob Myers, and the said Rolls, Pearle, and the defendant, Baker. He avers that Jacob *546 Myers did assume the payment of the bonds to him ; that it was agreed that he, said Owsley, should have the equitable title to said bonds ; that he did release Rolls and Pearle ; that Rolls released Baker ; and that he (Owsley) waited a year for payment, without taking out execution ; but that believing Jacob Myers to be an honest man, he took no written obligation, or assumpsit, from him.
Owsley also says, that he believes Baker’s title to be paramount to any others ; and that had a full and fair investigation taken place between John Myers and Beigler, the title would have been found in Myers, under the conveyance from Baker. And he alleges Jacob Myers was fully apprised of the dispute about the lot, when he made the assumpsit to Owsley, before mentioned. But Owsley, in his answer, puts no interrogatories to Jacob Myers, or any other ; and does not pray a decree against him for the 100/. with interest, or any other decree.
Jacob Myers filed his answer, purporting tobe an answer to the interrogatories put to him by the answer of the defendants, Baker and Owsley, in which he expressly denies having made any such assumpsit as is alleged in those answers, and the interrogatories. He admits he had knowledge of the dispute about the lot; avers the trial between Myers and Beigler was full and fair ; and that the suit was conducted by Baker’s own attorney, employed by him, to assist the attorney employed by Myers. He further says, that when Baker and Owsley came to see him on the business (which was before the trial of the ejectment), Baker repeated his assurances of the goodness of his title to the lot, and asserted that John Myers would certainly recover ; that the parties concluded the suit would be determined in a year ; and he admits he told Owsley that when the suit was determined, if John Myers was successful, and it turned out upon the trial that Baker’s title was good, he would, as soon as the title was settled, pay up the amount of the bonds to him or any other ; that if the title of any part was found to be in Beigler, he would be willing to pay in proportion to what was saved of the lot, after proper credits and deductions were made : and he avers he never made any other promise or assumpsit, than as above admitted. And he also avers he was, and is a stranger *547 to the transactions between Owsley, and Rolls, and Pearle, and between Rolls and Baker.
A general replication was put in by the obmplainant, John Myers, to the answers of the defendants ; but no replication was put in by the defendant, Baker, (or by Owsley) to the answer of Jacob Myers to the interrogatories put to him ia Baker’s answer.
At the-rules, the cause was set for hearing, on the motion ol the defendants, generally, without setting it for hearing particularly also, as to Jacob Myers, who was a special defendant, made by, and to the answer of Baker.
Upon the hearing of the cause, the court, as between John Myers and Baker, decreed that John Myers was entitled to relief, on the ground of Baker’s fraud in the sale of the lot, and the recovery by Beigler of about one third part of the lot; and direct a jury to be empan-neled, at a subsequent term, to ascertain the value of that part of the lot taken by Beigler’s claim ; reserving the question of costs, further directions, &c. And as between Owsley and- Jacob Myers, conceiving Jacob Myers’s assumpsit to be sufficiently proven, the court decreed that Jacob Myers should pay Daniel Owsley, one hundred pounds, with interest thereon, from the first day of September 1802, after the rate of 6 per cent, per annum, till paid ; that the injunction to that amount, be dissolved, as to Jacob Myers ; and that Jacob Myers pay to Owsley, his costs, &c. To reverse this decree, Jacob Myers has prosecuted a writ of error into this court; and the errors assigned, question, as well the regularity of the proceedings, as the merits of the decree against the said Jacob Myers.
The proceedings in the cause against Jacob Myers, are extremely irregular ; and the decree pronounced against him, does not seem to be warranted, either by the proceedings, or the evidence in the causé.
First — as to the proceedings : — The act of assembly allowing one defendant to exhibit interrogatories against another, or against the complainant, or against one not already a party to the suit, thereby making him a defendant, has substituted that proceeding in the room of a cross bill; and, from the reason of the case, all the consequences of a cross bill, must follow it. Before the passage of the act of assembly, one defendant could not *548 have a décrée oyer against another, without a crasa bill (a) ; nor can he since, without a prayer, at least, in, the nature of a cross bill. The defendant, Owsley, has exhibited no cross bill against Jacob Myers ; nor has he put to him interrogatories in his answer ; nor has he, in his answer, prayed a decree over against Jacob Myers, or any other decree, as in the case of a cross bill ; so that there is no proceeding in the cause, as between Owsley and Jacob Myers, authorising a decree in favor of Owsley against him, or making Jacob Myers a defendant to the claim set up by Owsley, in his answer.
The decree, therefore, must be deemed erroneous, unless Owsley can be permitted to come in under, and have the benefit of the interrogatories, &c. of Baker’s answer, under whom he claims ; but even in that way, the de cree cannot be supported.
Jacob Myers is not a defendant to the bill of the complainant, John Myers, but only a defendant to the answer of Baker, in the nature of a cross bill. It is, therefore, very doubtful, whether the cause can be cons;deied a9 set for hearing at all, as to Jacob Myers, a special defendant only, by the general rule, setting the cause for hearing as to the defendants generally ; and we incline to think it was not.
But waiving this point; as no replication was put in by Baker, to the answer of Jacob Myers, to the interrogatories put to him, the cause, if set for hearing at all, must be considered as standing upon the interrogatories, and the answer thereto, alone ; and, therefore, the answer of Jacob Myers must be taken as true ; as in the case of a cause set down for ttearing upon bill and answer, without replication.
The answer of Jacob Myers, positively denies the as-sumpsit to Owsley, as set forth in the answers of Baker and Owsley ; or that he (Myers) ever promised, otherwise than upon the event of the title of the lot being settled, and found in John Myers, by virtue of the purchase from Baker ; and, therefore, Owsley could not be entitled to a decree.
So muchas to the proceedings in the cause against J a-⅞ eob Myers.
But, admitting what is most favorable for Owsley, that the proceedings have been sufficiently regular ; and that he is entitled to come in under, and have the benefit of *549 she proceedings between Baker and Jacob Myers (the Only way in which Owsley can possibly be entitled to a decree), the decree made on behalf of Owsley, against Jacob Myers, is not warranted by the evidence in the caíase.
It has already been remarked, that the answer of Jacob Myers, which is responsive to the interrogatories, flatly denies the assumpsit to Owsley, as charged. No witness has been examined, who was present at the time the conversation or agreement took place between Ows-ley, Jacob Myers, and Baker. But one witness, James T. Worthington, speaks any thing to the point. He swears, that in the summer 1803, Daniel Owsley called at his house, and requested him to go with him to Jacob Myers, to see him on some business that was unsettled between them ; that they set out, and met Myers on the road ; that Owsley, after some conversation, not detailed, asked him if he did not assume the payment of the debt from Baker to him, if he would wait with him twelve months, and that Myers replied that he did ; and further, said that he was always willing to pay the debt, but wished to have the business so fixed with John Myers, that he might not lose any thing by it.
Proof cf confessions of a party, in the presence of the witness only, or of him and the adverse party, although certainly competent testimony, ought to be weighed with great caution ; because it is impossible for the party to counteract it by other testimony; because the expressions used are easily misunderstood, or perverted ; either through mistake or design ; and because, not the whole conversation, but only parts of it are generally detailed by the witness. It is the most dangerous species of testimony held competent by the law ; and unless the story told is probable in its nature, or is corroborated by circumstances, very little weight is due to it. Here, the witness does not detail, as the deposition admits, the whole, but only a part of the conversation ; the story told is not very probable, nor do the circumstances of the transaction warrant it, if it be inferred from the deposition, in contradiction to the answer of Jacob Myers, that he assumed to pay the' debt, whether John Myers lost the lot or not. Jacob Myers was but a security ¡ he was apprised, as is admitted by all the parties, of the |aw-suit then depending, between John Myers and *550 Beigl-er, about the lot. He was apprised, that if Joba lost the lot, or any part of it, he was entitled to relief-against the bonds, at least in part ; and the defendants, Baker and Owsley, both allege, that John was insolvent. Under these circumstances, it is very improbable indeed, that Jacob Myers would promise, unconditionally, to pay the debt to Owsley.
The circumstances, instead of corroborating the statement of the witness, if taken in the latitude insisted on by Owsley, go to shew that it would have been madness in Jacob Myers to have made such a promise. The other witness, Mr. Pearle, speaks only of what he understood from Owsley; which is not evidence against Jacob Myers. Here, then, is but one witness, uncorroborated by circumstances ; when the rule in chancery requires two, or one and strong circumstances, to overturn the positive denial of the answer responsive to the interrogatories.
It need only be further remarked, that John Myers and Jacob, appear clearly to be entitled to relief against the judgment at law, in proportion to the part of the lot taken by Beigler’s claim ; and that Owsley ought in no shape to compel Jacob, the security, to pay the debt to him, unless an express undertaking to do so, were clearly made out; which has not been satisfactorily done.
And it may be further observed, that as Owsley was not assignee, but claimed only by the assumpsit, and having an equitable interest under Baker, he cannot claim under the judgments ; but, if entitled to recover at all, it must be on the foot of the verbal agreement, which he could only assert in an appropriate action as plaintiff.
It is, therefore, decreed and ordered, that the said decree, or so much thereof as directs the said Jacob Myers to pay the said Daniel Owsley the said, one hundred pounds, with interest, &c. and also so much thereof as dissolves the injunction, as to the said Jacob Myers, be, and the same is hereby reversed, annulled, and set aside ; and that the residue of the said decree, being not now ’ before us, he is no way affected by this decree ; and this suit is remanded to the court from whence it came, for further proceedings to be had between the said John and Jacob Myers, and Frederick Baker. Which is ordered tobe certified, &c. And it is.further decreed and or *551 dered, that the said Daniel Owsley and Frederick Baker pay to the said Jacob Myers his costs in this behalf expended.

«1 Adb o 1796.7, ¡>. 48, * 9, I Brud, »5i-.